IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA A. ROGERS,

               Plaintiff,

                                      Civil No. 07-1563-ST

          v.

                                        FINDINGS AND
RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

               Defendant.

_____

STEWART, Magistrate Judge:

      Plaintiff, Lisa Rogers ("Rogers"), seeks judicial review of the Social Security

Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act. This court has jurisdiction under 42 USC §§ 405(g)

and 1383(c). The Commissioner's decision should be affirmed for the reasons that follow.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1960, Rogers completed high school.  Tr. 53, 70.[1]  Between approximately 1989 and 2003 Rogers worked as a cook, receptionist, lifeguard, swimming teacher and special events coordinator.  Tr. 75.

Rogers alleges disability since September 1, 2003, due to low back and hip pain.  Tr. 53, 65.  Rogers' application was denied initially and upon reconsideration.  Tr. 41-42, 46-49.  A hearing was held before an Administrative Law Judge ("ALJ") on March 9, 2007.  Tr. 281-318.  On March 23, 2007, the ALJ found Rogers not disabled.  Tr. 16-22.  The Appeals Council accepted additional evidence but denied a request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 3-6.

## DISABILITY ANALYSIS

In construing an initial disability determination under Title II, the Commissioner engages in a sequential process encompassing between one and five steps.  20 CFR § 404.1520, *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If so, the claimant is not disabled.  20 CFR § 404.1520(a)(4)(I).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month duration requirement.  20 CFR §§ 404.1509, 404.1520(a)(4)(ii).  If the claimant does not have such a severe impairment, then she is not disabled.  *Id.*

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on January 29, 2008 (docket #5).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment listed in the regulations. 20 CFR § 404.1520(a)(4)(iii). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 CFR § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 404.1566.

///

///

///

## THE ALJ'S FINDINGS

3 - FINDINGS AND RECOMMENDATION

At step two, the ALJ found that Rogers had the severe impairments of degenerative disc disease, chronic back strain, trochanteric bursitis, and a history of a right ankle fracture.  Tr. 18. At step three, the ALJ found that these impairments did not meet or equal a listed impairment and assessed Rogers' RFC as an ability to "to walk 4 blocks at a time, stand 30 minutes at a time, sit an hour at a time, lift 10 pounds, and climb a dozen stairs," with "a mild impairment in short-term memory and concentration."  Tr. 19.

Based on this RFC and the testimony of a vocational expert, the ALJ concluded that Rogers retains the ability to perform her past relevant work as a receptionist and telephone solicitor.  Tr. 22.  The ALJ therefore found Rogers not disabled at any time through the date of his decision.  *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Id,* citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id; see also Batson*, 359 F3d at 1193.

## FINDINGS

Rogers contends the ALJ improperly assessed her credibility, the opinion of her treating physician and the testimony of a lay witness.

## I.    <u>Rogers' Credibility</u>

At the hearing, Rogers testified that she uses a cane because of her sore hip.  Tr. 292-93.  She reports constant back pain, varying between 3 and 7 on a pain scale of 1 to 10.  Tr. 296.  The pain wakes her up at night.  Tr. 296-97.  Many times throughout the day, she sits in a recliner between five and 20 minutes, gets up to perform a task, and returns to the recliner.  Tr. 298-300.  She states that she can sit for 30 minutes and stand for five to 30 minutes at a time, walk a short distance, and lift 10 pounds occasionally.  Tr. 304-06.

The ALJ accepted some of Rogers' testimony by limiting her sitting, standing and lifting capabilities.  Tr. 19.  In particular, he found credible her allegation that "she can sit and stand only 30 minutes at a time."  Tr. 21.  However, he found that her statements "concerning the intensity, persistence and limiting effects of [her] symptoms not entirely credible."  Tr. 20.  In support, the ALJ's cited Rogers' activities of daily living and her medical record.  Tr. 20-21.

Rogers asserts that because her subjective complaints are consistent with the medical record, the ALJ was obliged to accept her complaints as credible.

### A.    <u>Legal Standard</u>

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter,* 504 F3d 1036, citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947

F2d 341, 344 (9th Cir 1991) (*en banc*).  The ALJ may consider objective medical evidence and

the claimant's treatment history, as well as the claimant's daily activities, work record, and

observations of physicians and third parties with personal knowledge of the claimant's functional

limitations.  *Smolen*, 80 F3d at 1284.  The ALJ may additionally employ ordinary techniques of

credibility evaluation, such as weighing inconsistent statements regarding symptoms by the

claimant.  *Id.*  Once a claimant shows an underlying impairment, the ALJ may not, however,

make a negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence."  *Robbins*, 466 F3d at 883.

  **B.**  <u>**Discussion**</u>

    **1.**  <u>**Activities of Daily Living**</u>

   With respect to Rogers' daily activities, the ALJ noted that her "allegations of

concentration difficulties are not consistent with the treatment record and her daily activities."

Tr. 21.  He further explained:

> While her pain medications may cause some concentration problems,
> there is no evidence of more than mild concentration deficits.  She has
> been able to teach a 2 ½ hour china painting class on a weekly basis.  She
> handles finances, reads, and sews.  Her spouse indicated that she is able to
> pay attention for very long periods.

*Id*.

   The ALJ also used these same daily activities to reject her assertion that she needed to

recline during the day as a medical necessity.  He added, as reported by her spouse, that she

"does light household chores and prepares light meals" and does "very light yard work."  *Id*.

Earlier he cited Rogers' testimony that she feeds and walks the dog, does laundry, and loads the

dishwasher.  Tr. 20.  Conceding that Rogers may rest during the day, he found no evidence of a medical necessity for reclining, in particular citing the March 2007 opinion by her treating physician which makes no such no reference.  Tr. 21.

While a claimant need not "vegetate in dark room," *Cooper v. Bowen*, 815 F2d 557, 561 (9th Cir 1987), the ALJ may cite a claimant's daily activities in conjunction with other factors. *Smolen*, 80 F3d at 1284.  Given that Rogers is able to engage in some daily activities requiring concentration, the ALJ's conclusion is both clear and convincing with respect to rejecting Rogers' assertion of her concentration deficits.  Similarly, based on the extent of her daily activities coupled with the medical record as discussed more fully below, the ALJ could properly conclude that Rogers overstated her need to rest and recline.  "Although the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [claimant]," the reviewing court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *Burch v. Barnhart*, 400 F3d 676, 680-81 (9th Cir 2005), citing *Magallanes*, 881 F2d at 750.  Thus, the ALJ's reference to Rogers' daily activities supports his credibility finding.

## 2.    **Objective Medical Evidence**

The ALJ's credibility discussion also cited Rogers' medical record as not supporting her need to rest and recline as a medical necessity.  Tr. 20-21.  His supporting citations to the medical records are accurate in that regard.  Contrary to Rogers' contention, none of her medical providers prescribed the extent of reclining and rest that she alleges.  Instead they prescribed pain medication, physical therapy, and steroid injections (Tr. 142-45) and encouraged massage and pool therapy/swimming (Tr. 170, 173, 175).

The ALJ also specifically noted that Rogers used a cane without a prescription or evidence of a medical necessity. Tr. 21. The ALJ's need not accept a claimant's testimony that she requires use of a cane or wheelchair if the record does not show that it was prescribed or used under medical direction. *See Thomas v. Barnhart*, 278 F3d 947, 959 (9th Cir 2002). The record reflects the ALJ's assessment since the sole reference to a cane does not include a prescription, but refers to the fact that Rogers still uses a cane "when out but feels more stable because of right ankle mobility." Tr. 169/184. This led a reviewing physician to note on April 15, 2005, that she "clearly does not medically require an assistive device nor has one been rx'd [prescribed]." Tr. 235. Furthermore, Rogers testified inconsistently at the hearing that she uses "a cane more because of [her left] hip." Tr. 292-93. Rogers therefore fails to establish that the ALJ inappropriately cited her use of a cane or failed to include this limitation in his RFC assessment.

The ALJ may not base his credibility assessment upon the medical record alone, but the ALJ may cite it in conjunction with other factors. *Smolen*, 80 F3d at 1284; *see* also *Robbins*, 504 F3d at 883. He cited not only the medical record, but also Rogers' daily activities. Thus, his credibility finding was free of error.

## II.    Medical Source Statements

In March 2007, Rogers' treating physician, Carma J. Lee., M.D., stated that Rogers could sit and stand for 30 minutes at a time and for four hours each in an eight-hour workday. Tr. 244, 257. She further stated that Rogers could not return to her previous work or perform any work consistently due to her unpredictable pain and other symptoms, including fatigue and memory/concentration difficulties. Tr. 246-48.

As noted by the ALJ, other physicians of record either did not assign any work restrictions (Tr. 133) or suggested more moderate work restrictions without attendance limitations (Tr. 230-35).  Tr. 21-22.  The ALJ thus implicitly found Dr. Lee's work restrictions contradicted by other physicians, though he nonetheless gave greater weight to the "exertional limitations" suggested by Dr. Lee.  Tr. 22.

Rogers does not challenge the ALJ's evaluation of Dr. Lee's postural work restrictions, but contends that the ALJ failed to appropriately evaluate the work attendance restrictions suggested by Dr. Lee.

### A.    Legal Standard

The ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to reviewing physician's opinion.  *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).  The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician.  *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

### B.    Analysis

The ALJ discussed Dr. Lee's diagnoses and treatment notes, noting that Dr. Lee did not think Rogers had fibromyalgia in January 2006.  Tr. 18, 21.  The ALJ also twice cited Dr. Lee's March 2007 opinion which stated that Rogers could sit for four hours during an eight-hour workday and stand for four hours during an eight-hour workday.  Tr. 21.  Here the ALJ noted that "Dr. Lee gave no indication [Rogers] would be required to recline during the day."  *Id,* citing Exhibit 10F (Tr. 242-45).  The ALJ then cited Dr. Lee's March 2007 restrictions a third

time, noting that Dr. Lee additionally restricted Rogers from sitting or standing more than 30 minutes at one time.  Tr. 22.  The ALJ concluded:

> The exertional limitations described by Dr. Lee are given significant weight.  However, her assessment that the claimant would miss work frequently is not supported by the treatment record.  The claimant has required only conservative treatment and she exhibits no neurological deficits.  Recent records reflect her pain is much better.  She reports she is using only 1/2 Vicodin about 3 days a week.  She exhibits only mild lumbar spinal tenderness.

*Id* (internal citations omitted).

Rogers claims the ALJ failed to credit Dr. Lee's opinion that "[t]here is no way her condition allows for any kind of a consistent schedule where she would be functional on a predictable basis."  Tr. 248.  This statement was made in response to a specific question about Rogers' "ability to work."  Tr. 247.  To the extent that it addresses Rogers' ability to work, it is a vocational assessment, not a medical opinion.  The opinion of the treating physician is not necessarily conclusive to the ultimate issue of disability since such assessments are reserved for the Commissioner.  20 CFR § 404.1527(c)(1).  Thus, the ALJ was not bound to accept this portion of Dr. Lee's opinion.  *Reddick v. Chater*, 157 F3d 715, 725 (9th Cir 1998).

Because Dr. Lee's work restrictions were contradicted by other medical sources, the ALJ was required to give only specific and legitimate reasons for rejecting Dr. Lee's opinion.  *Id.*, *Bayliss*, 427 F3d at 1216.  "Specific and legitimate" reasons may include "a detailed and through summary of the facts and conflicting clinical evidence" stating the ALJ's interpretation of that evidence and his findings.  *Reddick*, 157 F3d at 725.

The ALJ's findings discussed Dr. Lee's opinion and the opinions of other physicians in some detail.  Tr. 20-21.  Regarding Dr. Lee's controverted opinion addressing Rogers'

workplace functioning, the ALJ specifically noted that Rogers required "conservative treatment" and that her back and hip pain never required surgical intervention. Tr. 22. The ALJ's finding that Rogers' reported pain decreased near the close of the record and that Rogers relied upon less pain medication is also based upon the record. Tr. 249-50. These findings constitute "specific and legitimate" reasons for rejecting Dr. Lee's work opinion.

Most crucially, Rogers does not explain how Dr. Lee's treatment notes support a restriction precluding her from consistent work attendance. The ALJ may reject a physician's opinion that is unsupported by clinical notes or findings. *Bayliss*, 427 F3d at 1216. The record shows that Dr. Lee treated Rogers between April 2003 and January 2007. During this period Dr. Lee assessed lumbar and thoracic back pain, hip and leg pain, trochanteric bursitis, depression, ankle pain, and shoulder pain. In June 2006 and January 2007, Dr. Lee additionally noted a fibromyalgia diagnosis, but did not indicate which, if any, physician made this assessment. Tr. 250, 254. Yet Dr. Lee restricted Rogers from work for one month in January 2004, referring to "long term disability papers" but without specifying further restrictions. Tr. 187-88. She made no additional work restrictions prior to March 2007 and did not state that Rogers would be unable to maintain consistent work attendance. Thus, the record supports the ALJ's findings that Dr. Lee did not restrict Rogers from permanent work and that Dr. Lee's additional attendance limitation is unsupported by the record.

In summary, the ALJ's reasons for rejecting Dr. Lee's non-exertional limitations were sufficiently specific.

### III.    Lay Witness Testimony

11 - FINDINGS AND RECOMMENDATION

Rogers contends the ALJ inappropriately evaluated testimony submitted by her husband, Jesse Rogers.

**A.**    **Legal Standard**

The ALJ has a duty to consider lay witness testimony.  20 CFR §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F3d 503, 511 (9th Cir 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F3d 915, 918-19 (9th Cir 1993).  The ALJ may not reject such testimony without comment, *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996), but may reject lay testimony inconsistent with the medical evidence.  *Lewis*, 236 F3d at 511.

**B.**    **Analysis**

The ALJ considered Jesse Rogers' written report that his wife performs light household chores and yardwork, prepares simple meals, handles finances, reads, sews and paints china, and "requires rest periods when doing long tasks."  Tr. 21.  This summary of the Jesse Rogers' testimony is supported by the record.  Tr. 91-99.  The ALJ subsequently found Jesse Rogers' testimony "generally credible," but noted that no medical evidence suggests interim daily rest is necessary.  Tr. 21.  The ALJ need not credit lay testimony inconsistent with the medical evidence.  *Lewis*, 236 F3d at 511-12.  Because no medical evidence references Rogers' need for interim daily rest, the ALJ did not err in his evaluation of Jesse Rogers' testimony.

///

///

**RECOMMENDATION**

12 - FINDINGS AND RECOMMENDATION

Rogers fails to establish reversible error in the ALJ's analysis of the medical evidence, her testimony, or the testimony of the lay witness.  This court finds that the Commissioner's decision that Rogers did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and recommends that this case be AFFIRMED.

<u>**SCHEDULING ORDER**</u>

Objections to the Findings and Recommendation, if any, are due by July 24, 2008.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 7th day of July, 2008.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge